1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6         FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    METABYTE, INC,                          Case No. 20-cv-05506-CRB
9                Plaintiff,
10        v.                                 **ORDER GRANTING MOTION TO
                                             DISMISS**
11   TECHNICOLOR S.A, et al.,
12               Defendants.

13          Metabyte, Inc., a Digital Video Recorder (DVR) technology company, is suing

14   Technicolor S.A., Technicolor USA, Inc., Technicolor International SAS, Thomson

15   Licensing SAS, and Does 1 to 50 (collectively, Technicolor) under the Racketeer

16   Influenced and Corrupt Organizations Act (RICO) and California law.  In 2001,

17   Technicolor gained control of Metabyte's subsidiary, Metabyte Networks, Inc. (MNI).

18   Metabyte and certain Metabyte employees remained minority shareholders.  In 2009,

19   under Technicolor's direction, MNI sold its patent portfolio to a Technicolor subsidiary for

20   $1 million after an auction.  At some unknown time in 2011 or 2012, Metabyte CEO Manu

21   Mehta realized that the portfolio may have been worth much more after seeing news

22   stories about former competitor TiVo's patent portfolio.  So in 2013, Metabyte petitioned a

23   French court to obtain relevant documents from Technicolor.  Litigation over those

24   documents has continued for years, though nothing has happened since November 2016.

25   Separately, beginning in September 2016, Metabyte repeatedly attempted to get French

26   authorities to bring criminal charges against Technicolor, which could have resulted in

27   Metabyte recovering damages.  But in August 2019, a French appeals court affirmed a

28   French prosecutor's November 2018 ruling that France lacked jurisdiction.

In August 2020, Metabyte filed the instant suit. Technicolor now moves to dismiss, arguing that Metabyte's claims are time-barred and that Metabyte's complaint fails to state a claim for which relief may be granted. The Court grants Technicolor's motion to dismiss with leave to amend because, as presently pleaded, Metabyte's claims are time-barred. The Court determines that there is no need for oral argument.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

Metabyte is a California company with its principal place of business in Fremont, California. Amend. Compl. (dkt. 21) ¶ 3. Through its subsidiary MNI, Metabyte developed DVR technology that was protected by various patents. Id. ¶ 13. Metabyte's business strategy was to license its technology to cable companies for free so that Metabyte could eventually implement an advertising-based business model. Id. ¶¶ 13, 18. Before the year 2000, Metabyte, its principal shareholder and CEO Manu Mehta, members of Mehta's family, and some Metabyte employees invested in MNI common stock, with Metabyte holding 82% of the outstanding common stock. Id. ¶ 19.

In January 2000 and July 2001, Metabyte solicited investors on behalf of MNI, which sold preferred stock via two financing rounds. Id. ¶¶ 13, 20. During this time, Technicolor gained control of MNI. Id. ¶¶ 4–8, 13, 20.

In the first (January 2000) financing round, Technicolor acquired 2,471,910 shares of MNI Series A Preferred Stock. Id. ¶ 20. Metabyte alleges that before and after that transaction, Technicolor's officers and agents falsely represented to Mehta that (1) Technicolor wanted to pursue his strategy of licensing the DVR technology for free and later pursuing advertising revenue, and (2) MNI and Technicolor would share in the resulting revenue stream. Id. ¶ 21. Metabyte alleges that Technicolor did not intend to pursue that strategy, "nor did [Technicolor] intend to share any revenue stream from the MNI technology with MNI." Id. In reality, Technicolor invested in MNI as a "first step in acquiring the MNI patent portfolio" so that Technicolor could "use the patent portfolio to generate licensing fees through licensing and patent trolling." Id.

2

After the Series A funding round, a Technicolor representative told Mehta that Technicolor supported MNI's advertising-based business model. Id. But in December 2000, the same representative told Mehta that Technicolor "was not going to assist MNI in developing and exploiting the MNI technology for an advertising revenue model, or any other model, and that . . . Mehta should take steps to lay off MNI's staff and shut the company down." Id. The same month, MNI's Board of Directors adopted a resolution instructing MNI management to stop paying employees unless MNI found a cash infusion. Id. ¶ 24. Mehta was able to find "bridge money to keep MNI operating." Id.

Then, in July 2001, MNI sold 12,643,471 shares of Series B preferred stock to Canal+ Technologies. Id. ¶ 25. According to Metabyte, in the "lead up" to the Series B funding round, Canal+ Technologies indicated that it wanted MNI "to pursue a software subscription strategy to develop a sustainable revenue stream." Id. ¶ 26. When the Series B funding round occurred, Thomson SA was a minority shareholder in Canal+ Technologies. Id. ¶ 25. But around September 2002, Thomson SA acquired an additional 89% of Canal+ Technologies. Id. And "[u]nder the ownership of Thomson SA[,] Canal+ Technologies became . . . Technicolor International SAS." Id. Combined with the Series A funding round, this sequence of events enabled Technicolor to gain control of MNI's Board of Directors, with 61% of the voting shares and five of the seven board seats. Id. ¶¶ 26, 29. Metabyte and some of its officers and employees held a minority of the voting shares and controlled two of the seven board seats. Id. ¶ 29.

A majority of the board stopped supporting MNI's pursuit of a software subscription model and "began advocating that MNI should go into 'hibernation' while a 'new strategy' could be assessed." Id. ¶ 26. Because of the Series A and Series B funding rounds, and the resulting "liquidation preferences" granted to the preferred shareholders, "no common shareholder, including Metabyte, could receive any money from any liquidation of [MNI's] assets until the preferred shareholders had been paid in excess of $16.4 million from such liquidation." Id. ¶ 28.

With Technicolor now in control, on October 9, 2002, the MNI board terminated

Mehta as CEO and replaced him with a Technicolor employee.  Id. ¶ 27.  In 2003, "all MNI employees were laid off and MNI's computers containing the MNI technology were moved to Technicolor offices in Indiana."  Id.   From October 2002 to "about 2006," Technicolor represented to the minority shareholders (including Metabyte and Mehta) "that it intended to revisit MNI's prospects and the use of MNI's technology at some later point when the market matured."  Id. ¶ 30.

In 2006, Technicolor employees began telling the minority shareholders "that MNI had no business opportunities and that the only way to unlock the minimal residual value in the MNI technology was through auctioning its patent portfolio."  Id. ¶ 31.  But by then, "the DVR market had taken off" and Technicolor "was aware that the MNI patent portfolio was becoming extremely valuable," with a value "considerably in excess of $16 million."  Id. ¶ 32.  Unlike Technicolor, which had subsidiaries engaged in "patent management" and "the financial exploitation of patents," Metabyte and Mehta were "unaware" of patent portfolio's value.  Id.  Around the same time, Technicolor senior executives "developed a scheme to loot MNI of its patent portfolio through a rigged auction."  Id.  In 2008, Technicolor told Mehta that Technicolor intended to auction the patent portfolio and wind up MNI because Technicolor could no longer justify the expenses involved in maintaining the patent portfolio.  Id. ¶ 33.

Technicolor concluded the auction in December 2009.  Id. ¶ 35.  Before that, Technicolor continued making the same representations that MNI had no viable alternative to the auction, and continued to not inform Metabyte or Mehta about the patent portfolio's value.  Id. ¶ 34.  Defendant Thomson Licensing SAS, a Technicolor subsidiary, won the auction and obtained the portfolio for $1 million.  Id. ¶ 35.  When Mehta expressed his concern that the auction process "did not appear to be geared to obtaining the best possible price, Technicolor . . . falsely assured him of the trustworthiness of the process."  Id.  At one board meeting, a Technicolor-employed board member invited Mehta to top the winning bid by 30%, "but later retracted that invitation and rebuffed Metabyte's proffer of a higher offer."  Id.  Metabyte alleges that Technicolor "proposed the possibility that

Metabyte could purchase the portfolio for $1,300,000 in order to lull [Metabyte] into believing that the auction price was fair, or at worst, undervalued the portfolio by a relatively inconsequential amount that would not have resulted in any economic benefit to Metabyte" (given that Metabyte could only benefit if the patent portfolio, and therefore MNI's value, exceeded $16.4 million). Id. MNI was dissolved in October 2010. Id. ¶ 36.

Metabyte alleges that to date, Technicolor has "earned or saved" over $350 million "from licensing or cross licensing the former MNI patent portfolio directly or through claims of patent infringement." Id. ¶ 37. But Metabyte "remained igorant that it had suffered an economic injury by reason of the patent auction . . . until sometime in 2012." Id. ¶ 38. Because Metabyte would suffer such an injury only if the value of the patents exceeded the $16.4 million liquidation preference enjoyed by Series A and Series B preferred shareholders, Metabyte's suspicion that the portfolio was "undersold" at the auction was not enough for Metabyte to conclude it had suffered an injury. Id. But beginning with a "news report on May 2, 2011," and continuing with "additional news stories in 2012," publicly accessible information revealed that TiVo, a rival DVR technology company, "had been pursuing and recovering substantial amounts of money for patent infringement and/or royalty fraud." Id. ¶ 39. "At some point in 2012," Mehta "recognized" that the news about TiVo "possibly meant" that the MNI patent portfolio "had been worth more than $16 million at the time of the auction." Id.

### B. Proceedings in France

#### 1. Article 145 Discovery Proceedings

The parties agree that under Article 145 of the French Civil Procedure Code, a party may obtain evidence "in contemplation of litigation," see Opp. to Mot. to Dismiss (dkt. 29) at 3, or (put another way) evidence "necessary to bring legal action against another," Danis Decl. (dkt. 26) ¶ 6. On April 29, 2013, Metabyte invoked Article 145 and applied to a French Court for the appointment of a bailiff to conduct "investigative measures" at Technicolor's offices. Application for Ex Parte Investigatory Measures, Danis Decl. Ex. A (dkt. 26-1) at 1. Through these measures, Metabyte sought to recover "all documents,

notes, and exchanges relating to . . . (a) the strategy for exploiting the MNI patents and the decision to sell the MNI patents . . . (b) the methods for organizing and implementing the MNI patent auction . . . (c) the value of the MNI patents . . . [and] (d) the revenues and compensation . . . resulting from the MNI Patents." Id. at 15. The Article 145 application also described Metabyte's suspicion that Technicolor rigged the patent auction and that, based on TiVo's success, the patent portfolios had been worth much more than $1 million. See id. at 6–12.[1]

On May 14, 2013, the French court granted Metabyte's petition with respect to most of the requested documents, authorized a bailiff to obtain those documents from Technicolor, and instructed Technicolor to refrain from hindering the bailiff. See Amend. Compl. ¶ 40; Danis Decl. Ex. B at 17–18.

On February 26, 2014, the French court denied Technicolor's request that the court nullify the order granting Metabyte's petition, but also denied Metabyte immediate access to the seized documents. Id. ¶ 41; Danis Decl. Ex. D (dkt. 26-4). The French court noted that there was a "serious dispute" between Metabyte and Technicolor regarding the patent auction, such that Metabyte had a "legitimate reason for its request for investigative measure[s]," but held that Metabyte could not access the documents "given the uncertainty over the jurisdiction before which Metabyte may potentially summon . . . Technicolor and/or its US subsidiaries." Danis Decl. Ex. D at 6, 7. The French court determined that it should hold the evidence in "escrow, leaving it to the parties, once the court is seized on the merits, to request communication thereof with regard to the laws applicable to said

---

[1] Metabyte's amended complaint characterizes the Article 145 application as "alleging fraud and breach of fiduciary duty." Amend. Compl. ¶ 40. But while the application alleged wrongful conduct on the part of Technicolor, the proceedings did not involve substantive claims for relief based on fraud or breach of fiduciary duty. As discussed below, the Court takes judicial notice of the April 2013 filing. And that filing requests only the above-described "investigative measures." The court also takes judicial notice of the French court's May 2013 order granting Metabyte's request, in which the French court stated that Metabyte "intends to bring an action for liability against [Technicolor]," implying that Metabyte had not done so through the Article 145 proceedings. Order Granting Application for Ex Parte Investigatory Measures, Danis Decl. Ex. B (dkt. 26-2). This is consistent with the parties' acknowledgment that Article 145 proceedings enable a party to obtain information that the party might separately use to bring substantive claims for relief.

jurisdiction." <u>Id.</u> at 7.

Metabyte appealed, and on May 7, 2015, the Versailles Court of Appeals ruled that Metabyte could access the documents. Amend. Compl. ¶ 41; Danis Decl. Ex. E (dkt. 26-5). The Versailles Court of Appeals determined that although Metabyte might ultimately use the documents to sue in United States court, French law governed the more limited document discovery dispute, and thus potential differences between French and United States law were not relevant. Danis Decl. Ex. E at 6–7.

Technicolor appealed that decision, but on November 3, 2016, the Cour de Cassation affirmed the Versailles Court of Appeals's ruling and dismissed Technicolor's appeal. <u>See</u> Amend. Compl. ¶ 41; Danis Decl. Ex. F (dkt. 26-6). Metabyte alleges that despite this victory at the Cour de Cassation, the bailiff did not release all the relevant documents to Metabyte because Technicolor threatened the bailiff with legal action. <u>See</u> Amend. Compl. ¶ 41. The Article 145 proceedings remain pending, but nothing further has occurred. <u>See</u> Opp. to Mot. to Dismiss at 3; Danis Decl. ¶¶ 23–24.

### 2. Criminal Proceedings

On September 4, 2016—while Technicolor was unsuccessfully appealing the Versailles Court of Appeals's discovery ruling to the Cour de Cassation—Metabyte filed a criminal complaint against Technicolor. Amend. Compl. ¶ 42. On January 20, 2017, the "Public Prosecutor of Paris sent Metabyte a dismissal notice stating that the offense was insufficiently grounded." Plainte avec Constitution de Partie Civile, Danis Decl. Ex. I (dkt. 26-9) at 1. On June 2, 2017, Metabyte again attempted to initiate criminal proceedings by filing a "Plainte avec Constitution de Partie Civile" with the Tribunal de Grant Instance de Nanterre. Amend. Compl. ¶ 42; Danis Decl. Ex. I. In that filing, Metabyte accused Technicolor of "fraud and abuse of powers" and encouraged the Public Prosecutor of Nanterre to begin an "investigation . . . as soon as possible." Danis Decl. Ex. I at 21–22. Metabyte also sought damages from Technicolor based on those accusations. <u>Id.</u> at 1.

On November 23, 2018, the prosecuting magistrate determined that France lacked

1    jurisdiction "to proceed against Technicolor or award damages to Metabyte." Amend.

2    Compl. ¶ 42. Metabyte appealed, but on August 12, 2019, the French appeals court

3    affirmed and determined "that the matter belonged in courts in the United States." <u>Id.</u>

4    **C.    Proceedings Before This Court**

5        About one year later, on August 10, 2020, Metabyte sued Technicolor in this Court.

6    <u>See</u> Complaint (dkt. 1). On January 5, 2021, Metabyte amended its complaint. <u>See</u>

7    Amend. Compl. Metabyte asserts that Technicolor violated the Racketeer Influenced and

8    Corrupt Organizations Act (RICO), <u>id.</u> ¶¶ 45–71, conspired to violate RICO, <u>id.</u> ¶¶ 72–79,

9    breached Technicolor's fiduciary duty to MNI's minority shareholders including Metabyte,

10   <u>id.</u> ¶¶ 80–82, defrauded Metabyte, <u>id.</u> ¶¶ 83–88, intentionally interfered with Metabyte's

11   contractual relations and/or prospective economic advantage, <u>id.</u> ¶¶ 89–92, breached the

12   implied covenant of good faith and fair dealing, <u>id.</u> ¶¶ 93–95, and violated California

13   Business and Professions Code section 17200, <u>id.</u> ¶¶ 96–98. Metabyte seeks damages

14   "according to proof but . . . believed to be at least $350 million." <u>Id.</u> at 26. Metabyte also

15   seeks treble damages for the alleged RICO violations and restitution based on

16   Technicolor's alleged violation of California Business and Professions Code section

17   17200. <u>Id.</u> at 26–27.

18       Technicolor has moved to dismiss, arguing that Metabyte's claims are time-barred

19   and that the amended complaint fails to state a claim for which relief may be granted. <u>See</u>

20   Mot. to Dismiss (dkt. 24).

21   **II.    GENERAL LEGAL STANDARD**

22       Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

23   dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P.

24   12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory"

25   or "sufficient facts alleged" under such a theory. <u>Godecke v. Kinetic Concepts, Inc.</u>, 937

26   F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual

27   allegations depends on whether it pleads enough facts to "state a claim to relief that is

28   plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic</u>

8

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.

Under Rule 9(b) of the Federal Rules of Civil Procedure, when a complaint alleges fraud, the plaintiff "must state with particularity the circumstances constituting fraud," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). When dismissing a case, courts generally must give leave to amend unless it is "determined that the pleading could not be cured by the allegation of other facts" and therefore amendment would be futile.  Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

## III.   DISCUSSION

The parties dispute what documents the Court may consider while ruling on Technicolor's motion to dismiss, whether Metabyte's claims are time-barred, and whether Metabyte has stated any claim for which relief may be granted.

The Court concludes that it in addition to the amended complaint, the Court may consider Metabyte's application for ex parte investigatory measures, court filings related to that application, and Metabyte's Plainte avec Constitution de Partie Civile, but not other disputed documents.  The Court further concludes that Metabyte's claims are time-barred. The Court grants Technicolor's motion to dismiss on that basis, but gives Metabyte leave to amend.

### A.   Judicial Notice and Incorporation by Reference

Before addressing the parties' substantive arguments regarding Metabyte's claims, the Court must resolve the parties' threshold dispute regarding what materials the Court may consider while ruling on Technicolor's motion to dismiss.  See Request for Jud.

Notice (dkt. 24-1); Opp. to Request for Jud. Notice (dkt. 30). The Court concludes that in addition to the allegations in the amended complaint, the Court may consider Metabyte's application for ex parte investigatory measures in French court, court filings related to that application, and Metabyte's Plainte avec Constitution de Partie Civile. The Court declines to consider any other documents at this stage. The Court also notes that in resolving questions of French law, the Court has wide latitude to consider relevant material but has not looked beyond the amended complaint and the above-listed documents.[2]

## 1. Relevant Rules

The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Incorporation by reference "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." Id. "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). The doctrine of incorporation by reference applies in either of two scenarios. First, incorporation is appropriate when "the complaint necessarily relies upon a document." Id. A complaint relies on a document when "the sufficiency of a claim requires that the document at issue be reviewed." Khoja, 899 F.3d at 1002. But "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." Id. Second, incorporation is appropriate

---

[2] The facts and procedural history recited above reflect these rulings.

when "the contents of the document are alleged in a complaint, the document's authenticity is not in question[,] and there are no disputed issues as to the document's relevance." Id.

Separately, courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters of public record are properly the subject of judicial notice. See Hyatt v. Yee, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).

Also relevant here, under Rule 44.1 of the Federal Rules of Civil Procedure, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. "[C]ourts do not transgress the broad boundaries established by Rule 44.1 when considering foreign legal materials—including exert testimony and declarations—at the pleading stage." De Fontbrune v. Wofsy, 838 F.3d 992, 1000 (9th Cir. 2016).

## 2. Application to Documents at Issue

Technicolor has requested that the Court take judicial notice of certain documents. See Request for Jud. Notice. Some of the documents are attached to a declaration from Marie Danis, a French lawyer. See Danis Decl. (dkt. 26) ¶¶ 1–3. These documents include Metabyte's application for ex parte investigatory measures filed in French court on April 30, 2013, see Danis Decl. Ex. A, court filings related to that application, see Danis Decl. Exs. B–F, a February 2018 letter from Mehta to Thomson S.A. employee Frederic Rose stating that a criminal investigation of Technicolor was ongoing in France, see Danis Decl. Ex. G (dkt. 26-7), a March 2020 email exchange between Technicolor and Metabyte representatives in which Metabyte's criminal complaint is attached, see Danis Decl. Ex. H (dkt. 26-8), and Metabyte's June 2, 2017 Plainte avec Constitution de Partie Civile, see Danis Decl. Ex. I (dkt. 26-9). The Danis declaration also includes additional details

regarding the French proceedings and French law.  See Danis Decl. ¶¶ 6–29.

Other documents are attached to a declaration from R. Alexander Pilmer, who is representing Technicolor in the instant lawsuit.  See Pilmer Decl. (dkt. 25).  These documents consist of communications that Metabyte sent in 2009 regarding the patent portfolio auction.  See Pilmer Decl. Exs. 1–9 (dkt. 25-1–25-9).

The Court takes judicial notice of Metabyte's application for ex parte investigatory measures, court filings related to that application, and Metabyte's Plainte avec Constitution de Partie Civile.  See Danis Decl. Exs. A–F, I.  As Metabyte acknowledges (except with respect to the Plainte avec Constitution de Partie Civile), the existence and authenticity of these filings are not subject to reasonable dispute.  See Fed. R. Evid. 201(b); Opp. to Request for Jud. Notice at 6.  Metabyte's amended complaint also asserts allegations based on the content of these documents, the authenticity and relevance of which is not disputed. Khoja, 899 F.3d at 1002.[3]

The Court does not take judicial notice of other documents.  Metabyte's claims do not rely on the letter from Mehta to Rose, see Danis Decl. Ex. G, nor is the letter referenced in the amended complaint, see Coto Settlement, 593 F.3d at 1038; Khoja, 899 F.3d at 1002.  Technicolor's contention that "this letter was the first notice that Technicolor received of the criminal proceeding," Request for Jud. Notice at 4, indicates that the letter could be relevant to Technicolor's defense that Metabyte's claims are time-barred, but does not indicate that the Court should incorporate the letter by reference into the complaint or consider the letter at this stage.  See Khoja, 899 F.3d at 1002.  The same goes for the March 2020 email exchange between Metabyte and Technicolor representatives, see Danis Decl. Ex. H; Request for Jud. Notice at 4, and the 2009 correspondence regarding the patent portfolio auction, see Pillmer Exs. 1–9; Request for Jud. Notice at 4–5.  Technicolor may proffer these documents to help Technicolor establish defenses at the summary judgment stage (if necessary), but it would be premature

---

[3] The Court does not assume the truth of factual assertions within these documents.

for the Court to consider them now.

Finally, although Rule 44.1 of the Federal Rules of Civil Procedure permits the Court to consider the Danis Declaration's statements regarding French law, the Court does not rely on those statements. The Court's rulings are based on the amended complaint and the judicially noticed and incorporated documents discussed above.

### B. Limitations Periods

Technicolor argues that Metabyte's claims are time-barred. Mot. to Dismiss at 4. According to Technicolor, Metabyte's claims accrued no later than December 2009, the longest limitations period for any of Metabyte's claims is four years, and the instant lawsuit, filed in 2020, thus "comes too late." Id.

Metabyte argues that the relevant limitations periods did not begin to run until much later given (1) Metabyte's delayed discovery of its injury and (2) the legal proceedings in France. With respect to its RICO claims, Metabyte argues that it had no reason to suspect that it had been injured until learning about TiVo's success at some point in 2012, but that even then, Metabyte needed more information to conclude that Metabyte had suffered a non-speculative injury (that is, Metabyte needed more information to confirm that the patent portfolio had actually been worth more than $16.4 million). See Opp. to Mot. to Dismiss at 10. Metabyte further argues that it could not have known of its injury until the French proceedings concluded because Metabyte may have obtained full compensation for any injury through those proceedings. See id. Thus, Metabyte argues that "Metabyte was not on notice it had suffered a RICO injury until its document discovery and compensation claim[s] in the French courts were dismissed on grounds not going to their merits." Id. at 12.[4] And with respect to Metabyte's California claims, Metabyte argues that the same circumstances "support findings of delayed discovery and equitable tolling under California law." Id. at 12.

---

[4] Metabyte's language here is imprecise. As noted above, so far as the Court can tell, the document discovery proceedings remain pending, though nothing has occurred in those proceedings since 2016.

The Court concludes that Metabyte's RICO claims are time-barred because Metabyte was injured in 2009, has not provided detailed enough allegations to support a delayed claim-accrual date, has not timely asserted its RICO claims even if the limitations clock did not start ticking until 2012, and cannot rely on the French proceedings to pause that clock. The Court concludes that Metabyte's California claims are time-barred because Metabyte was injured in 2009, has not provided detailed enough allegations to invoke the delayed discovery rule, and would not be entitled to equitable tolling based on the French Article 145 discovery proceedings because those proceedings could not have limited or remedied any injury to Metabyte. Given these rulings, the Court need not address whether the French criminal proceedings equitably tolled the California limitations periods.

### 1. Civil RICO

Civil RICO plaintiffs must allege "harm to a specific business or property interest," City of Almaty v. Khrapunov, 956 F.3d 1129, 1132 (9th Cir. 2020), and civil RICO claims are subject to a 4-year limitations period, see Rotella v. Wood, 528 U.S. 549, 553 (2000). Consistent with the Supreme Court's holding that the "start of the limitations period" must be tied to "the point of injury or its reasonable discovery," id. at 558,[5] the Ninth Circuit has held that a Civil RICO claim "accrues" when a plaintiff "knows or should know of the injury which is the basis for the action," Grimmett v. Brown, 75 F.3d 506, 511 (9th Cir. 1996) (quoting Stitt v. Williams, 919 F.2d 516, 525 (9th Cir. 1990)). For example, in RICO actions involving allegations of fraud, the plaintiff "is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 365 (9th Cir. 2005) (quotation omitted). Thus, when there is a delay between when a RICO plaintiff suffers harm to a business or property interest and when the plaintiff should know enough to conduct a reasonable investigation that would reveal the injury, the 4-year clock begins to run at the latter date.

---

[5] Rotella expressly left open whether the limitations period should start when the injury occurs or when the injury should have reasonably been discovered. 528 U.S. at 554 n.2.

Once a plaintiff has actual or constructive knowledge of the plaintiff's injury, the mere existence of alternative proceedings that might make the plaintiff whole does not pause or otherwise impact the limitations period. See Grimmett, 75 F.3d at 516. In Grimmett, a divorcee sued under the civil RICO statute, alleging that the defendant "masterminded" the reorganization of the plaintiff's ex-husband's medical practices in order to "cheat" the plaintiff "out of her post-divorce community property interest in those practices." Id. at 508. The plaintiff had also filed an adversary complaint in her ex-husband's bankruptcy proceedings. See id. at 509. Grimmett first rejected the plaintiff's argument that the bankruptcy proceedings "automatically tolled" the RICO limitations period; the court explained that the plaintiff was not "required to avail" herself of those proceedings as a "precondition" to filing her RICO suit. Id. at 515. Even if the plaintiff "could have raised her RICO claim in some form in the bankruptcy proceeding, she could have simultaneously pressed her claim in federal court." Id. at 515–16. Next, Grimmett rejected the plaintiff's argument that because the bankruptcy court could have awarded her "all her damages and thereby remove[d] all her injury," until the bankruptcy proceedings concluded, she had "not yet definitively suffered injury," such that her claim had not "accrued." Id. at 516. That argument failed because the relevant question was whether the injury had "occurred" and was "known," not whether "the damages might be reduced or even eliminated by alternative recovery efforts." Id. at 517.

Applying these rules, Metabyte's civil RICO claims are time-barred. Here, the relevant "harm to a specific business or property interest" was the harm that Metabyte suffered when Technicolor auctioned MNI's patent portfolio, allegedly worth more than $16.4 million, for just $1 million. See City of Almaty, 956 F.3d at 1132. The "point of injury" was thus December 2009. See Amend. Compl. ¶ 35. Metabyte failed to assert its civil RICO claims for over a decade, and Metabyte's arguments excusing that delay are unavailing.

First, Metabyte has not specifically alleged a later date at which Metabyte knew or should have known about its injury; Metabyte's vague assertion that Mehta "recognized"

15

United States District Court
Northern District of California

the possible injury "[a]t some point in 2012" after seeing relevant news articles in 2011 and 2012 is not enough to determine any particular injury accrual date after the auction occurred in December 2009.  Id. ¶ 39.

Second, even assuming that Metabyte's fuzzy allegations could establish a delayed accrual date, Metabyte's claims would still be time-barred.  Based on the amended complaint, Metabyte had constructive knowledge of its injury no later than December 31, 2012.  Because in 2011 and "[a]t some point in 2012" Mehta saw news stories that "possibly meant that the MNI patent portfolio had been worth more than $16 million at the time of the auction," id., at some point in 2012 Metabyte "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery" of Metabyte's injury.  Living Designs, 431 F.3d at 365.  But despite having that information, Metabyte did not sue within four years of December 31, 2012.[6]

Metabyte provides two excuses for that delay.  First, although Mehta suspected that Metabyte suffered an injury at some point in 2012, Metabyte needed more information to confirm that the value of the patent portfolio had actually exceeded $16.4 million, such that Metabyte had actually suffered a financial injury.  Opp. to Mot. to Dismiss at 10. Second, if the French proceedings had resulted in Metabyte being awarded its "equitable share of the patent portfolio . . . then Metabyte would have been made whole [and] would not have suffered a RICO injury."  Id.  So Metabyte needed to see what happened in the French proceedings to know if it suffered an injury.

These are not legitimate excuses.  Metabyte's own allegations establish that Metabyte had the constructive knowledge necessary to trigger the RICO limitations period no later than "[a]t some point in 2012."  Amend. Compl. ¶ 39.  Metabyte's suggestion that it needed to subjectively confirm its injury ignores the Ninth Circuit's clear holding that having enough knowledge to warrant an investigation that (if conducted diligently) will

---

[6] Indeed, it is unclear what prevented Metabyte from asserting its RICO claims against Technicolor in 2012.  To the extent that Metabyte wanted more evidence, Metabyte may have been able to obtain those documents through discovery in U.S. courts.

reveal the injury is enough for civil RICO claim accrual. Living Designs, 431 F.3d at 365. And to the extent that Metabyte argues that Metabyte needed to not only confirm its injury, but also ascertain "the extent of damages," Opp. to Mot. to Dismiss at 10, the Ninth Circuit has expressly rejected the argument that a plaintiff must be able to ascertain the extent of damages for the plaintiff's RICO claim to accrue. See Grimmett, 75 F.3d at 517.

Grimmett also squarely forecloses Metabyte's argument that because the French proceedings could have made Metabyte whole, Metabyte's injury did not accrue until those proceedings ended. See 75 F.3d at 515–17. Whether "damages might be reduced or even eliminated by alternative recovery efforts" is simply irrelevant. Id. at 517. Metabyte "was not prevented from filing this action pending resolution of the [French proceedings], and to allow tolling here would encourage delayed RICO filings and piecemeal litigation across multiple jurisdictions." Noland v. Chua, 816 F. App'x 202, 203 (9th Cir. 2020).[7]

In sum, Metabyte's civil RICO claims are time-barred because Metabyte has not provided enough detail to invoke any delayed discovery rule; Metabyte's own allegations indicate that it had constructive notice no later than December 31, 2012; and Metabyte cannot invoke the French proceedings to excuse its delay in bringing these claims. Although Metabyte's own allegations lead the Court to conclude that Metabyte's civil RICO claims are time-barred, the Court nonetheless grants Metabyte leave to amend given the possibility, if remote, that some set of allegations could cure the above-described deficiencies. See Cook, Perkiss & Leihe, 911 F.2d at 947.

### 2. California Claims

Claims under California Business & Professions Code section 17200 and claims asserting breach of fiduciary duty or breach of the implied covenant of good faith and fair

---

[7] Two additional notes: First, Technicolor has introduced evidence suggesting that Metabyte had enough information to warrant an investigation as early as December 2009. But the Court emphasizes that it does not consider that evidence at this stage. Second, Metabyte's argument that it could not have had actual or constructive knowledge of its injury until the French proceedings concluded, see Opp. to Mot. to Dismiss at 10, is further belied by the absence of any allegations in the amended complaint regarding what additional relevant information Metabyte obtained during those proceedings. Whatever Metabyte learned about the value of the patent portfolio between 2012 and the instant lawsuit, if anything, is not in the amended complaint.

dealing are subject to 4-year limitations periods.  <u>See</u> Cal. Bus. & Prof. Code § 17208; Cal. Code Civ. Proc. §§ 337, 343.  Claims asserting fraud or intentional interference with contractual relations are subject to 3-year and 2-year limitations periods, respectively.  <u>See</u> Cal. Code Civ. Proc. §§ 338(d), 339.

When the clock starts ticking depends on when "the plaintiff discovers, or has reason to discover, the cause of action."  <u>Aryeh v. Canon Bus. Sols., Inc.</u>, 55 Cal. 4th 1185, 1191 (2013) (citation omitted).  Although a plaintiff can therefore invoke a delayed discovery rule based on when the plaintiff "<u>should have</u> discovered" the injury, such a plaintiff "must specifically plead facts to show (1) the time and manner of discovery <u>and</u> (2) the inability to have made earlier discovery despite reasonable diligence."  <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 808 (2005) (emphasis in original).

More generous equitable tolling rules apply to California claims than civil RICO claims.  Under California law, "equitable tolling relieves [the] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage."  <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1275 (9th Cir. 1993) (quotation and alteration omitted).  But such a plaintiff must satisfy three additional conditions.  There must be "(1) timely notice to the defendants in filing the first claim; (2) lack of prejudice to the defendants in gathering evidence for the second claim; and (3) good faith and reasonable conduct in filing the second claim."  <u>Id.</u>  Because this test is "fact-intensive" and ordinarily "requires reference to matters outside the pleadings," it "is more appropriately applied at the summary judgment or trial stage of litigation," unless "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue."  <u>Id.</u> at 1276.

Based on the amended complaint, Metabyte's California claims accrued in December 2009, when the patent auction occurred and Metabyte was injured.  <u>See</u> Amend. Compl. ¶ 35.  Of course, Metabyte has attempted to allege that it did not know and should not have known about its injury until years later.  But Metabyte cannot invoke California's

delayed discovery rule because Metabyte has not "specially plead[ed] facts to show . . . the time and manner of discovery." <u>Fox</u>, 35 Cal. 4th at 808. Metabyte references news articles from 2011 and 2012 and vaguely asserts that, "[a]t some point in 2012," Mehta "recognized" that the patent portfolio had "possibly" been worth more than $16 million when the auction was conducted. Amend. Compl. ¶ 39. Based on these allegations, it remains a mystery when in 2011, 2012, or later Metabyte actually discovered its injury.

Because Metabyte did not initiate proceedings in France until April 29, 2013—more than three years and four months after the patent auction—Metabyte's fraud and intentional interference with contractual relations claims (which are subject to 3-year and 2-year limitations periods, respectively) are time barred. <u>See</u> Cal. Code Civ. Proc. §§ 338(d), 339. And because more than eleven additional months passed after the French proceedings concluded but before Metabyte filed the instant lawsuit, Metabyte's California Business & Professions Code section 17200, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing claims (which are subject to 4-year limitations periods) are also time-barred. <u>See</u> Amend. Compl. ¶ 44; Cal. Bus. & Prof. Code § 17208; Cal. Code Civ. Proc. §§ 337, 343.[8]

Although that is enough to sink Metabyte's California claims as currently pleaded, the Court also notes that Metabyte cannot invoke the French Article 145 discovery proceedings to equitably toll the relevant limitations periods. Under California law, equitable tolling based on separate proceedings is available only when, through those proceedings, a plaintiff "pursues" one or more "remedies . . . designed to lessen the extent of his injuries or damages." <u>Cervantes</u>, 5 F.3d at 1275. If the alternative proceedings do not fit that description, the Court need not consider the other factors relevant to equitable

---

[8] The Court recognizes that the Article 145 proceedings in France are, technically, still pending. <u>See</u> Opp. to Mot. to Dismiss at 3; Danis Decl. ¶¶ 23–24. But to the extent that Metabyte relies on the French proceedings to toll the statute of limitations, Metabyte argues that the limitations period should be tolled only "from April 29, 2013 to August 12, 2019." Amend. Compl. ¶ 44; <u>see also</u> Mot. to Dismiss at 10. Because (in both the amended complaint and its briefing on the instant motion) Metabyte characterizes the French proceedings as having concluded for all relevant purposes on August 12, 2019, the Court counts the time between August 12, 2019 and the filing of Metabyte's complaint on August 10, 2020, towards the limitations periods.

tolling.  See id.  Here, the amended complaint and the limited set of documents subject to judicial notice and incorporation by reference make clear that the Article 145 proceedings could have provided Metabyte with relevant documents, but could not have provided any relief that would "lessen the extent" of Metabyte's "injur[y] or damages."  Indeed, the French courts expressly acknowledged that Metabyte could obtain substantive relief only through further, separate proceedings—whether in French courts, United States courts, or some other forum.  See Danis Decl. Ex. D at 6-7; Danis Decl. Ex. E at 6–7.[9]

The unavailability of equitable tolling based on the Article 145 proceedings reinforces the Court's conclusion that Metabyte's California claims are time-barred.  Metabyte requested damages in the separate French criminal proceedings that (by one arguable measure) began in September 2016, and such damages could have conceivably mitigated Metabyte's injury.  See Danis Decl. Ex. I at 1.  But there is no need to determine whether the French criminal proceedings satisfy the additional requirements for equitable tolling.  See Cervantes, 5 F.3d at 1275.  Either way, Metabyte has asserted its California claims far too late.  Even if (1) Metabyte's vague allegations supported applying the delayed discovery rule to start the California limitations periods "at some point" in 2012 (i.e., on or before December 31, 2012), and (2) the French criminal proceedings tolled the California limitations periods from September 4, 2016 to August 12, 2019, see Amend. Compl. ¶ 45, more than four years would have elapsed before Metabyte asserted its California claims on August 10, 2020.

The Court thus grants Technicolor's motion to dismiss Metabyte's California claims because those claims are time-barred.  The Court once again gives Metabyte leave to amend in the event that some set of allegations could cure the above-described deficiencies.  See Cook, Perkiss & Leihe, 911 F.2d at 947.

---

[9] The Court is mindful that under California law, the Court must not resolve questions about alternative proceedings prematurely.  The Court thus relies only on the amended complaint and appropriate documents, and not on assertions by Technicolor, in its ruling regarding the Article 145 proceedings.  See Cervantes, 5 F.3d at 1276.  The Court notes that Metabyte has not attempted to explain how Metabyte could have obtained relief that would lessen the extent of its injury or damages through the French discovery proceedings.

*

Because the Court concludes that Metabyte's claims are time-barred, the Court need not reach the question whether Metabyte has otherwise stated claims for which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Technicolor's motion to dismiss with leave to amend. Metabyte may file a second amended complaint within 45 days of the date of this order.

**IT IS SO ORDERED.**

Dated: April 30, 2021



CHARLES R. BREYER
United States District Judge